1               UNITED STATES DISTRICT COURT
                    DISTRICT OF MINNESOTA
2

3   ----------------------------------------------------------

4   281 CARE COMMITTEE, RON STOFFEL,   Case No.:  0:07-cv-04560
    W.I.S.E. CITIZEN COMMITTEE,
5   VICTOR E. NISKA,

6            Plaintiffs,                  TRANSCRIPT

7        vs.                                 OF

8   RAYMOND R. KRAUSE, JOEL BRUDE,        PROCEEDINGS
    CITIZENS FOR QUALITY EDUCATION,
9
             Defendants.
10
    ----------------------------------------------------------
11

12

13

14          The above-entitled matter came on for hearing

15   before Judge James M. Rosenbaum, on July 1st, 2008, at the

16   United States District Courthouse, 300 South Fourth Street,

17   Minneapolis, Minnesota 55415, commencing at approximately

18   10:30 a.m.

19

20

21

22                          CALIFORNIA CSR NO.:   8674

23                       ILLINOIS CSR NO.:   084-004202

24                           IOWA CSR NO.:   495

25                            RMR NO.:   065111

1                         <u>APPEARANCES</u>

2                         MOHRMAN & KAARDAL, P.A., 33 South Sixth Street,

3      Suite 4100, Minneapolis, Minnesota 55402, by ERICK G.

4      KAARDAL, Attorney at Law, appeared as counsel on behalf of

5      Plaintiffs.

6                         MINNESOTA ATTORNEY GENERAL'S OFFICE, 445

7      Minnesota Street, Suite 1800, St. Paul, Minnesota 55101-2134,

8      by KENNETH E. RASCHKE, Jr., Assistant Minnesota Attorney

9      General, appeared as counsel on behalf of Defendant, Raymond

10     R. Krause.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    LAW CLERK:   Your Honor,  the matter on the

2      calendar is Civil Case Number 07-4560,  281 Care Committee,  et

3      al.,  versus Raymond R.  Krause,  Chief Judge.

4                    Will  counsel  please stand and state your

5      appearance.

6                    MR.  KAARDAL:   Good morning,  your Honor.   My

7      name is Erick Kaardal,  from the Mohrman & Kaardal  law firm,

8      representing the plaintiffs.

9                    THE COURT:   Mr. Kaardal,  good morning.

10                    MR.  RASCHKE:   I'm Kenneth Raschke,  Assistant

11      Minnesota Attorney General.   I represent the defendant,  Judge

12      Krause.

13                    THE COURT:   Mr.  Raschke,  good morning.

14                    MR.  RASCHKE:   Good morning.

15                    THE COURT:   And who are the two gentlemen in

16      the back?

17                    MR.  KAARDAL:   Your Honor,  those are my two

18      oldest sons,  Samuel and Leo Kaardal,  and they're here to

19      observe the federal  court proceedings this morning.

20                    THE COURT:   Gentlemen,  you are welcome.   You're

21      very far away.   Why don't you come in and you can sit --

22                    MR.  KAARDAL:   You'd better follow the court's

23      order.   can they sit at this table,  your Honor?

24                    THE COURT:   Yes.   Gentlemen,  maybe your father

25      will  tell  you.   You know,  you came through that gate,  that

1    gate right there.  Why don't you tell them what they just

2    did.

3                    MR. KAARDAL:  You just entered the -- that's

4    the bar and that separates the crowd from the parties and the

5    lawyers.  Is that correct, your Honor?

6                    THE COURT:  And they call that gate -- there is

7    a line like that or a gate in every courtroom and they call

8    it the "bar," and lawyers are called -- or -- are referred to

9    as being "members of the bar" or "admitted to the bar."

10   Normally only lawyers and the parties in the case are allowed

11   to cross the bar.  But in this case, gentlemen -- and I'm

12   confident you will behave as gentlemen -- and you will and

13   you are -- you are welcome, and you may be seated inside the

14   bar, but don't ever tell anybody.

15                   LEO KAARDAL:  Thank you.

16                   SAMUEL KAARDAL:  Thank you.

17                   THE COURT:  Counsel, you may proceed.

18                   MR. KAARDAL:  May it please the court, your

19   Honor --

20                   THE COURT:  Counsel.

21                   MR. KAARDAL:  -- this motion is brought by the

22   plaintiffs to certify the class under Rule of Civil Procedure

23   23, and there are two --

24                   THE COURT:  Mr. Kaardal, why don't you tell me

25   who the plaintiffs are.

1                MR. KAARDAL:   The plaintiffs are Victor Niksa

2    and his group, W.I.SE.; Ron Stoffel and his group, 281 Care

3    Committee; and Joel Brude and his citizens' organization.

4    Those are the six plaintiffs in the case.

5                THE COURT:   Now, which, if any, of them have

6    faced anything under Minnesota Statute 211B.01(1)?

7                MR. KAARDAL:   Mr. Niska and W.I.S.E. were

8    involved in a proceeding in the Office of Administrative

9    Hearings, where, under the procedural rules, OAH determined

10   that there was a prima facie case found on three claims based

11   on their non-defamatory speech.   Those proceedings then went

12   to a probable cause hearing.   My law firm represented Mr.

13   Niska and W.I.S.E., and the claims were eventually dismissed.

14              THE COURT:   So only Mr. Niska, by himself or on

15   behalf of W.I.S.E., had any sort of proceeding and ultimately

16   it was dismissed against him.

17              MR. KAARDAL:   Right.   And per his affidavit,

18   $1,900 of attorney fees were incurred in his representation.

19              THE COURT:   Okay.   Now, the others have not; is

20   that correct?

21              MR. KAARDAL:   In the other instances, those are

22   threats.   And that's how the case originated.

23              THE COURT:   And the lawsuit -- all right.   And

24   how am I to notify or find out who the other parties are?

25              MR. KAARDAL:   You mean in the proposed class?

1            THE COURT:  Yes, sir.

2            MR. KAARDAL:  We've identified the class, the

3    "class" being voters in the district who would want the

4    information.  And, so, there are two subclasses.  I'm talking

5    about the second subclass.  And that is, my clients wish to

6    represent voters in the district who want all non-defamatory

7    speech said so they can sort it out themselves; that more

8    political speech is better than less; and charging $1,900 for

9    a person vindicating his free-speech rights just isn't

10   allowed by the law.  And, so, our position is -- and I know

11   that was going to be --

12           THE COURT:  So your challenge is, at least

13   ostensibly, a facial challenge to a statute; is that correct?

14           MR. KAARDAL:  That's right.  And it's not the

15   first time I've made those arguments to this court, your

16   Honor.

17           THE COURT:  Now, hold on a minute.  I try and

18   ask questions one a time.  Because I can't handle complicated

19   issues, I have to go slow.  I'm not familiar with bringing an

20   action against an administrative law judge.  Have you seen a

21   facial challenge to a free-speech question by suing an

22   administrative law judge?

23           MR. KAARDAL:  No.  But this issue was raised

24   before with respect to Judge Noel's ruling and I was at the

25   hearing.  And based on the Eighth Circuit case -- the name

1    escapes me for the moment -- oh.  It's the St. Paul Area

2    Chamber of Commerce.  The U.S. District Court was reversed on

3    a free-speech claim made against a county attorney who was

4    prosecuting under Minnesota's ban -- wasn't prosecuting --

5    but could prosecute under Minnesota's ban on corporate

6    contributions to political causes.  And there a jurisdiction

7    was found.  And, so, here, analogizing to that case, we sued

8    the likely complainant -- that was the one who had threatened

9    Mr. Mack -- who has now been dismissed -- the Robbinsdale

10   School Superintendant -- and OAH on the theory, "Well, you've

11   got, you know, these two, and they're prosecuting the law.

12   And on the jurisdictional issue, of course, the Office of

13   Administrative Hearings answered.  So that wasn't raised to

14   the court at that time.  If the court wants to talk about

15   that more --

16              THE COURT:  Where, if somebody sues me, the

17   United States Attorney's Office will answer.  But I think I

18   have immunity, as long as I'm doing things related to my job.

19              MR. KAARDAL:  Well, with respect to the Office

20   of Administrative Hearings, we would assert, your Honor, it

21   is a quasi judicial office and doesn't carry the full

22   judicial means.  And beyond that, there are cases where

23   judges have been sued under 1983 and they have been held

24   liable for attorney's fees.  Now, I would understand that

25   there's a very high bar that --

1          THE COURT:  Let's back up.  I mean, this is --
2     there are cases where judges have put people in jail on
3     statutes and offenses which were not jailable.  There are
4     cases, as I understand it, where judges have ordered people
5     sterilized.  This is a judge who, setting aside the fact that
6     you sued him, did exactly what you wanted, he dismissed the
7     claim against the party.  True?
8          MR. KAARDAL:  What we exactly wanted is for him
9     to find, in the first instance, under the Constitution --
10    which is just as much law as the law that makes that
11    administrative law judge a judge --
12         THE COURT:  Well, the Constitution is more than
13    the law that makes him a judge, I believe.  That's the
14    supreme law of the state of Minnesota.
15         MR. KAARDAL:  So it was the entertaining of the
16    proceeding which was illegal.  I would hope that, you know,
17    if there were illegal proceedings in this courtroom that
18    there would be some remedy of the law to stop an illegal
19    proceeding by injunction or writ of mandamus, or whatever.
20    And, so, here, where the jurisdiction under First Amendment
21    claims is very solid, I think that this qualifies as one of
22    those illegal proceedings.  Now, your point being is it a
23    chief judge that --
24         THE COURT:  I've got a judge who heard a case,
25    decided it, I think correctly -- at least nobody challenged

1    it -- as opposed to a judge who sterilized somebody or a

2    judge  -- you know, a jaywalking offense -- who, for whatever

3    reason, jailed somebody, which is not an incarcerateable

4    offense, those kinds of things are not usually permitted.

5    But I'm not sure where the judge has -- where the judge is a

6    person you want to be suing here.

7                 MR. KAARDAL:  Well, I think that he's being

8    sued in a --

9                 THE COURT:  Why don't you give me a cite that

10   tells me that an administrative law judge -- not -- don't

11   give me a prosecutor -- tell me a cite that an administrative

12   law judge has been sued where his actions have been, if you

13   will, precisely what you would have otherwise chosen.  Or you

14   can even strike off that last clause.

15                MR. KAARDAL:  Could you repeat it without the

16   clause noted, if you could?

17                THE COURT:  Sure.  A case where an

18   administrative law judge has been sued by way of an attack on

19   a statute.

20                MR. KAARDAL:  Okay.  I will do that.  I can't

21   give it to you now.

22                THE COURT:  All right.

23                MR. KAARDAL:  But with respect to the point, I

24   think it's fair to respond that there is a unique set of

25   circumstances here that has led to this point.  The

1      administrative law judges customarily, as I understand it,

2      serve the administrators.  And, so, the administrative law

3      judges makes recommendations to the commissioners, and so

4      forth.  They accept them or reject them.  They serve under, I

5      guess, federal remedy -- you know, at Article II, Executive

6      Branch.  And, so, similarly, that happens at the state level.

7      But here a few years ago, with respect to 221B.06,

8      jurisdiction -- for a hundred years it was the county

9      attorney's responsibility to prosecute violations.  And,

10     then, the county attorneys got tired of their responsibility

11     -- my view -- and they lobbied the legislators and this found

12     a home in the Office of Administrative Hearings.  And, so,

13     unlike the typical administrative proceedings, this is

14     outside Chapter 14, which is their version of the

15     Administrative Procedures Act, and this operates in a

16     separate area.  I'll look for the cite, but I would also like

17     to provide the court with some of the legislative history

18     describing how we got to where we are, because I think that

19     brings it within the scope of the Eighth Circuit decision.

20             THE COURT:  You may continue.

21             MR. KAARDAL:  And I also want to add to that.

22     The statutes would be a place also to find some support for

23     that.  At the end --

24             THE COURT:  Which statutes for support for

25     what?

1           MR. KAARDAL:  211B. -- I think it's 44.  211B.

2    The procedures in the Office of Administrative Hearings

3    proceeding include, at the conclusion, possibly a referral to

4    the county attorney.  So in my clients' case, we face a

5    triple liability defamation case.

6           THE COURT:  But why in the world are you -- my

7    problem -- and for the moment, I will tell you, it's yours --

8    is why are you suing a state judge -- or -- a state

9    administrative law judge?  Presumably if you challenge a

10   statute, how do you normally do so?  You can either make an

11   attack on a conviction -- which you don't have -- normally or

12   you sue the attorney general of the state of Minnesota, don't

13   you?

14          MR. KAARDAL:  I would notify the attorney

15   general.  And I guess we can remedy it in our pleadings.

16   That way we will.

17          THE COURT:  Well, then a further question, it

18   seems to me that a class action -- I'm just not sure that you

19   need a class action here, either.  I mean, this is a

20   strangely pled case, counsel, I will be more than frank.

21          MR. KAARDAL:  Well, I think --

22          THE COURT:  I mean an attack on a statute is

23   certainly permissible.  But I don't know what a class action

24   is here, I really don't.  I don't know how I find out who the

25   parties are.  I presume everybody is interested in the law

1   and everybody is interested in free speech and, to the best

2   of my knowledge, the United States Constitution protects it.

3   But that having been said, I'm just not sure that this is the

4   way you make the facts that you want to make.

5                   MR. KAARDAL:  Well, I think that -- well, first

6   of all, I appreciate that.  And I'm not the smartest lawyer,

7   but I do --

8                   THE COURT:  Welcome aboard.

9                   MR. KAARDAL:   -- learn from my mistakes.  I was

10  before this court before in the Third Congressional District

11  v. Klobuchar and there the claim was related to that my

12  client had said, "I'm the only Republican in the race."  So

13  the county attorney prosecuted the claim and Judge Tunheim

14  found jurisdictional problems.  One way to address --

15  because, you know, eventually the Eighth Circuit -- because

16  it did -- I believe changed circumstances -- affirmed.  And

17  the point being that, you know, with -- that there are

18  doctrines that this court recognizes -- you know, was it

19  capable of repetition that evades review -- and I'm trying to

20  address that.  But I -- if the court wanted, I could have

21  additional -- I know committee groups coming forward who have

22  been threatened with these kind of claims.  The Orono group

23  certainly would bring one, and others.  And, so, I'm getting

24  these calls that this law is a problem, and that when I speak

25  the truth, they see a falsehood and then they sue me.  And

1          they don't even need to be harmed because it's about false

2          speech about things, not false speech about people.

3                    THE COURT:  I've read the statute.  I

4          understand what your claim is.

5                    MR. KAARDAL:  Right.

6                    THE COURT:  I'm concerned about who your

7          plaintiff is and I'm concerned about who your defendant is

8          and I'm very concerned about whether or not it's a class

9          action.

10                    MR. KAARDAL:  Right.  And, so, my explanation

11         of the class action is that these people themselves have

12         submitted affidavits -- which are unopposed -- that they feel

13         chilled.  Even in this case, in the Orono School District,

14         the Orono School District described my plaintiffs in this

15         case as antiprogress.  And my clients have testified that

16         they feared, if they went after the school district before

17         the election, that they would have an OAH complaint filed

18         against them.  So that was, like, in February.  And, so, I

19         believe that there's the jurisdiction.  These elections

20         repeat themselves.  My clients have demonstrated that their

21         speech has been chilled.  And I believe that under Rule 23

22         that we've satisfied the requirement.  I guess the court is

23         raising do I have to ascertain the particular members of the

24         class, and I think in this case that -- unlike the Wolfchild

25         case -- I haven't for federal claims -- I spent years

1 ascertaining the members -- it's not necessary to ascertain

2 --

3     THE COURT:  But that's an Article I court.

4 This is different.

5     MR. KAARDAL:  Okay.  In the case of -- okay.  I

6 mean, with respect to ascertaining the individual members, I

7 don't think it's necessary because we're not going to issue

8 notice -- we're not proposing that -- and we're not proposing

9 anything more than a declaratory judgment in whatever court's

10 going to --

11     THE COURT:  Which gets me back to why don't you

12 just bring a declaratory judgment action or challenge the

13 constitutionality of the state statute?  I mean, I still have

14 a very hard time of figuring out why we've got this

15 defendant, I really do.

16     MR. KAARDAL:  They're enforcing the law.

17     THE COURT:  No, it's the judge.  He's

18 adjudicating the law.

19     MR. KAARDAL:  That's where the proceedings

20 occurred and that's how we get fined.  Well, I guess I feel a

21 little bit --

22     THE COURT:  All the -- I mean -- okay.

23     MR. KAARDAL:  So I guess using the Eighth

24 Circuit precedent --

25     THE COURT:  But the Eighth Circuit precedent is

1    a county attorney.  The action is not initiated by the judge
2    who decides the case, is it?
3                    MR. KAARDAL:  No.  The administrative law judge
4    doesn't start the case.  Any witness --
5                    THE COURT:  Who starts it?
6                    MR. KAARDAL:  In this case, any witness.
7                    THE COURT:  And who's the plaintiff -- who acts
8    as the plaintiff in the case?
9                    MR. KAARDAL:  Anybody.
10                   THE COURT:  But who represents the plaintiff?
11                   MR. KAARDAL:  In the OAH proceeding?
12                   THE COURT:  Uh-huh.
13                   MR. KAARDAL:  It's a puzzle.  I mean, when we
14   were up on appeal in Riley v. Jankowski, I challenged all
15   these laws, that they left my client off on a narrower
16   ground.  It was a puzzle on what -- how -- who would defend
17   the OAH determination.  And OAH ended up defending on the
18   law, and the party -- so OAH was thankful -- was willing to
19   represent based on the facts.  But OAH defends generally on
20   appeal, particularly if the complainant won't go forward.
21   There's no way to compel the complainant to defend on appeal.
22   And on the judgment, costs -- after the judgment, costs were
23   assessed.  Half the costs were assessed to OAH, half the
24   costs to the complainant.  And, so, the court of appeals in
25   the oral argument -- they didn't get the transcript -- said,

1    Well, you don't even have the power to enforce the judgment.

2    How do you get people to pay these if they don't voluntarily

3    pay.   So this is the awkwardness of the proceeding.   And

4    Riley v. Jankowski covers some of our concerns that I

5    expressed that weren't -- they were ruled on, and here we are

6    today.   Now, after --

7              THE COURT:   That part I agree with.

8              MR. KAARDAL:   Here we are today.

9              THE COURT:   Yes, sir.

10             MR. KAARDAL:   And, so -- but getting to your

11   point there, I don't think we need to ascertain who the

12   individual members of the class are.   I provided some

13   testimony in my affidavit that there are registered voters,

14   the number of registered voters in the different districts.

15   The speech that we're talking about -- every one of these

16   proceedings -- deters speech that these people want because

17   --

18             THE COURT:   How is your dad doing so far?

19             LEO KAARDAL:   (No verbal response).

20             SAMUEL KAARDAL:   (No verbal response).

21             THE COURT:   Okay.

22             MR. KAARDAL:   And, so -- and I -- the case law

23   does say that we don't need to be as concerned about

24   ascertaining these people when it's a declaratory injunctive

25   action.   And I think that with respect to the other factors

1      that we've -- I think we really have met them, the common

2      question of law and fact.  I think -- I understand, your

3      Honor, I'm coming in here and I'm saying, "Look, I'm a

4      plaintiff's lawyer, I've used my imagination.  I see justice

5      here."  Now -- and I understand you're -- "But wait, why

6      should I go along with this guy?"  But the point is that I --

7                    THE COURT:  Hold on a second.  You've got to be

8      careful.  Only one of us has made a series of declarations;

9      you did in your pleadings.  Okay?  I'm just the judge.

10                   MR. KAARDAL:  I understand, your Honor.  I

11     understand.

12                   THE COURT:  I don't have an ax to grind in this

13     case.  I'm a judge.

14                   MR. KAARDAL:  I didn't mean to suggest that,

15     your Honor.

16                   THE COURT:  Okay.

17                   MR. KAARDAL:  But what I'm just saying is that,

18     you know, defense lawyers have a job, I have job.  My job --

19                   THE COURT:  But my job is to make sure that if

20     you've got a good claim, you bring it against the right

21     parties and I've got a case to work with.  I'm not sure it's

22     crafted that way at this time.

23                   MR. KAARDAL:  Okay.  And that goes back to my

24     point I may not be the smartest lawyer.  But nonetheless --

25                   THE COURT:  But you'll do.

 1              MR. KAARDAL:  -- I do want -- but I want to say

 2     that what I saw was -- when I got the call election night was

 3     I then saw, "Well, look, this is a problem statewide.  For

 4     whatever reason, there's a grassroots movement against these

 5     bond referenda and tax referenda and the school districts" --

 6     and I have two or three cases here that --

 7              THE COURT:  Love these laws.

 8              MR. KAARDAL:  Love these laws.  And what I saw

 9     was these little guys getting squished with attorneys' fees

10     and quitting as they're -- because they're publishing their

11     stuff at home.  And, so, I said, "Well look, there's a

12     statewide problem here with the law.  Let's put these people

13     together."  And the reason I believe there's a class --

14     there's no other reason -- and I read the rule.  And, so --

15              THE COURT:  I keep having a bad time, first,

16     with the class.  I can live with the class for the moment.

17     The biggest problem is your defendant.  You want to enjoin

18     him from being allowed to hear these cases, is that what you

19     want me to do?

20              MR. KAARDAL:  Absolutely.

21              THE COURT:  Okay.

22              MR. KAARDAL:  Why is that?  Because innocent

23     people are being charged for their free speech in an

24     administrative case.  And if you --

25              THE COURT:  You just don't see a lot of cases

1      -- like I said, I have a hard time seeing -- I can handle

2      enjoining judges from adjudicating cases or finding them

3      liable for doing what their job is, even Article I or Article

4      -- or -- hearing -- or -- Executive Branch judges, but -- and

5      I have no case law that supports that, that I'm aware of.

6      That's the reason I keep asking, why in the world don't you

7      bring a case against the attorney general of the state of

8      Minnesota and ask him to defend his law, on some kind of a

9      facial challenge, or something of that type.

10                  MR. KAARDAL:  Well --

11                  THE COURT:  But I'm not the lawyer.  You're the

12     guy who's done that.  You've been to the court of appeals.

13     So far you've come in second is how I think you described it.

14     But that's okay.

15                  MR. KAARDAL:  The court of appeals proceeding?

16                  THE COURT:  Yes, sir.

17                  MR. KAARDAL:  Yeah.  I prevailed for my lawyer

18     (sic), but not on the big point.

19                  THE COURT:  I understand.  Well, you also

20     prevailed for your client in this one -- or -- whoever did.

21                  MR. KAARDAL:  Yeah.  But I missed in the OAH

22     proceeding.

23                  THE COURT:  But you're not getting what you

24     want.  What you want is to be not getting prosecuted for

25     expressing opinions that school boards are not happy about.

1    That's what you're looking for, I believe.

2                 MR. KAARDAL:  Right.

3                 THE COURT:  Okay.  Well, at least I understand

4    where we are.  Anything else you want to tell me?

5                 MR. KAARDAL:  Well, I think that -- well, I

6    guess that I would beg the court leave if I have made -- and

7    I'll provide the cite, if it's there.  And if it's not there,

8    that I would have an opportunity before my complaint is

9    dismissed without prejudice, for lack of a good defendant, or

10   whatever, that I have a chance to amend the Complaint to add

11   a proper defendant; otherwise, we'd just have to start --

12                THE COURT:  Well, you can sue the state of

13   Minnesota, I think.

14                MR. KAARDAL:  Right.

15                THE COURT:  I mean it is a party that's

16   commendable to sue, particularly in federal court on

17   constitutional issues.

18                MR. KAARDAL:  Right.

19                THE COURT:  I mean, once again, I'm not -- I

20   used to be a lawyer.  I don't do that anymore.

21                MR. KAARDAL:  Right.  Well, I appreciate the

22   time, your Honor, and thank you for listening to arguments.

23                THE COURT:  Counsel, thank you.

24                Counsel, good morning.

25                MR. RASCHKE:  Good morning, your Honor.  May it

1    please the court --

2              THE COURT:   Counsel, your brother, I have to

3    tell you, has cited a statute with which I had not been

4    familiar, but which I find interesting.

5              MR. RASCHKE:   And which statute is that, your

6    Honor?

7              THE COURT:   Minnesota Statute 211B.06(1).

8              MR. RASCHKE:   Okay.   Well --

9              THE COURT:   In the realm of political speech,

10   as I understand it, it's a misdemeanor to intentionally

11   participate in an advertisement or other kind of thing which

12   promotes or defeats a question that's false and known to be

13   false.   I mean what about -- how about a statement of "This

14   is as a lousy bond issue"?   Now, is that a statement that's

15   either true or false?

16             MR. RASCHKE:   No, your Honor.   The courts of

17   Minnesota, at least, have made it very clear that that

18   statute does not address matters of opinion, only issues of

19   objective fact.

20             THE COURT:   Okay.   How about "This would be

21   injurious to our community"?

22             MR. RASCHKE:   I would say the same.   I mean, I

23   would --

24             THE COURT:   All right.   How about "It is

25   motivated by ill will on the part of the school board"?

1          MR. RASCHKE:  I don't think that would be found

2     to be --

3          THE COURT:  Well, tell me --

4          MR. RASCHKE:  -- a violation.

5          THE COURT:  -- what would be.  "The chairman of

6     the school board maintains a pornographic Web site"?

7          MR. RASCHKE:  That probably wouldn't be a

8     violation unless we were talking about --

9          THE COURT:  How about "He's a horse thief"?

10         MR. RASCHKE:  -- a person running --

11         THE COURT:  How about "He's a horse thief"?

12         MR. RASCHKE:  Unless the chairman of the school

13    board was running for office and it was said in the context

14    of his candidacy, that wouldn't be covered.  Because the

15    ballot question only talks about false statements of fact

16    concerning the effect of a valid question, if I'm not

17    mistaken.  It doesn't address statements about character or

18    motivation of the people that support or don't support the...

19         THE COURT:  Okay.  "Designs or tends to elect,

20    injure, promote or defeat a candidate for nomination."

21         MR. RASCHKE:  "Or..."

22         THE COURT:  Yeah.  "Or election to a public

23    office or to promote or defeat a valid question that is false

24    and that the person knows is false or communicates to others

25    with reckless disregard of whether it is false."  Obviously

1          some people are being prosecuted under this thing.

2                    MR. RASCHKE:  But I think, if I'm not mistaken

3          -- and I thought I had a copy of that statute here -- and I

4          guess I do in our memo -- that it relates to subdivision one,

5          "false statements with respect to the personal or political

6          character or acts of a candidate" --

7                    THE COURT:  "The political character of a

8          candidate."

9                    MR. RASCHKE:  "Character or acts of a candidate

10         or with respect to the effect of a ballot question."  So your

11         examples about, you know, impugning the integrity of the

12         president of the school board wouldn't be covered by the

13         statute unless it was in the context of a school board

14         election.  And I don't know if that --

15                   THE COURT:  That's when I think you probably

16         want to run it.  Okay.  Now, meanwhile, counsel, what are

17         your thoughts respecting whether or not Raymond Krause is a

18         proper defendant in this case?

19                   MR. RASCHKE:  Oh I would say definitely not.

20                   THE COURT:  What I meant is that you'd suggest

21         that.  But why?

22                   MR. RASCHKE:  Well, I think --

23                   THE COURT:  First of all, do they enjoy

24         judicial immunity?

25                   MR. RASCHKE:  I think they would enjoy quasi

1      judicial immunity, which is very similar to judicial

2      immunity.  So that would be --

3                  THE COURT:  Is that spelled c-r-a-z-y or

4      q-u-a-s-i?

5                  MR. RASCHKE:  Q-u.

6                  THE COURT:  All right.

7                  MR. RASCHKE:  And I -- for the same reason your

8      Honor is sad, that --

9                  THE COURT:  Is there a case which holds that

10     one in the -- or -- one closely analogous to Raymond L.

11     Krause -- or -- Raymond R. Krause is immune from suit?  Your

12     brother tells me he'd like to find one.  And do you have one

13     that says that he ain't going to find one?

14                 MR. RASCHKE:  There's none that come to mind,

15     although I would be fairly confident of saying that I could

16     find one that would say he's immune from suit for damages.

17     Whether it would be utterly immune from suit for declaratory

18     injunctive relief in situations like your Honor posed, where

19     he's acting totally outside the context of his statutory and

20     quasi judicial authority, I --

21                 THE COURT:  Well, I mean, a judge is also -- I

22     should make it very clear -- if a judge engages in sexually

23     discriminatory conduct respecting her or his staff, that is

24     not -- I mean there's no immunity for that.  But I'm talking

25     about when a judge puts on their robe and goes out and works

1   on a law -- I'm not familiar with the fact that you can sue

2   an administrative law judge simply quasi -- he's an

3   administrative law judge rather than a full adjudicating

4   officer.

5              MR. RASCHKE:  I don't think you can, your

6   Honor.  There may be circumstances in a writ of prohibition,

7   for example, if the court is --

8              THE COURT:  Well, this could be by way of his

9   writ of prohibition.

10             MR. RASCHKE:  But that would have to be in the

11   context of an individual case that was pending before the

12   judge or before the ALJ.  And I think part of the issue here

13   and part of our argument, I guess, against the lawsuit is

14   that Judge Krause --

15             THE COURT:  Well, let's assume that they were

16   making either -- they were either making a facial or

17   as-applied challenge, however, to this statute on First

18   Amendment grounds, how would that normally be done?

19             MR. RASCHKE:  I think in a lot of cases the

20   plaintiffs have sued a nominal defendant such as the

21   governor.  I'm not sure whether the attorney general has been

22   sued in that situation where the attorney general is in

23   charge with responsibility of enforcement.

24             THE COURT:  But you sue the state or the

25   governor, or something like that?

1          MR. RASCHKE:   They sue the state.   Now, the

2     state would be immune from damages but not necessarily immune

3     from injunctive relief.

4          THE COURT:   And presumably not immune from

5     having a statute invalidated.

6          MR. RASCHKE:   No.

7          THE COURT:   All right.

8          MR. RASCHKE:   And another way that --

9          THE COURT:   Dollar damages don't seem to be a

10    large part of this claim.

11         MR. RASCHKE:   No.   But another way that it

12    could come up is on appeal from someone who has been punished

13    for having violated this statute.   That's the way a lot of

14    these things would arise.

15         THE COURT:   And then what you do is you

16    challenge through the state procedure, and then go to the

17    United States Supreme Court on appeal from the state Supreme

18    Court if the state Supreme Court upheld whatever the

19    violation was.

20         MR. RASCHKE:   Right.

21         THE COURT:   The problem that your brother here

22    suggests, what is it capable of repetition.   But more than

23    that, he's got a real problem here.   So do you.   You've got a

24    ugly statute.   It doesn't mean I don't like it, it doesn't

25    mean it's unconstitutional.   But for the moment, I'm going to

1    call it ugly.  Okay?

2                    MR. RASCHKE:  Okay.

3                    THE COURT:  Now --

4                    MR. RASCHKE:  For the sake of argument.

5                    THE COURT:  We'll call it for the sake of

6    argument.  Now, he being a good lawyer comes up and defends

7    his client, and his client comes in front of Ray Krause and

8    Ray Krause says, "Wait a minute.  This is an ugly statute and

9    this guy should not be held liable under it."  Now, what is

10   he going to appeal?  He's going to appeal from his attorney's

11   fees?

12                   MR. RASCHKE:  Pardon me?

13                   THE COURT:  His clients, Mr. Niska and

14   W.I.S.E., went up in front of the -- got the adjudication

15   that they wanted, "Sorry, you're not liable under this

16   statute."  Except he said, "Wait a minute, my client's been

17   chilled, because he had to pay $1,900 worth of attorney's

18   fees."  So he won.  Now where does he go to get a remedy?

19   As in, don't do me this again.

20                   MR. RASCHKE:  If that's a valid challenge to a

21   statute, then every statute would be subject to the same

22   challenge.

23                   THE COURT:  So then he needs to make either a

24   facial or as-applied challenge; correct?

25                   MR. RASCHKE:  Yes.

1          THE COURT:   Okay.   And do you think the better

2     way -- is there a better way to do it than suing Ray Krause?

3          MR. RASCHKE:   I'm not generally in the business

4     off advising my opponents' clients.

5          THE COURT:   No.   But you are in the business of

6     -- the attorney general's office is also a servant of the

7     people.

8          MR. RASCHKE:   Yes, your Honor.

9          THE COURT:   All right.   And as an officer of

10    the court and a servant of the people, how do you go about

11    challenging statutes, usually?

12         MR. RASCHKE:   Well, one way is to do it within

13    the context of an individual case.

14         THE COURT:   Yeah.   But the trouble is you keep

15    winning the cases because the law might be ugly.

16         MR. RASCHKE:   Well, I mean, you might have to

17    create a statute so that the law doesn't reach the

18    unconstitutional result that they're claiming.

19         THE COURT:   Now we write an onerous statute on

20    which people get regularly acquitted and, therefore, we have

21    no problem with the statute because they get acquitted?   This

22    argument doesn't go very well.

23         MR. RASCHKE:   Well, if the argument against the

24    statute is that it's so broad it would cover all this

25    protected conduct and it turns out that it doesn't, then I

1     think that answers part of the challenge.  You know, if I

2     challenge a statute on the ground that it punishes me for

3     telling the truth or for issuing -- or -- for expressing my

4     opinion and somebody charges me with a violation, and I go

5     into court and the court says, "No, it doesn't punish you for

6     that.  And we see, you know, what the facts are, and it looks

7     like all you did was express your opinion, even though it was

8     not a very well-founded one, so we're going to throw the case

9     out because we don't think the statute goes that far."  That

10    kind of eliminates, at least for that case, any argument that

11    it's invalid because it punishes all this lawful conduct.

12             THE COURT:  What about the fact that it costs

13    you 2,000 bucks to get a good lawyer to help you make sure

14    that you don't go to jail for it?

15             MR. RASCHKE:  Well, I mean I -- whether or not

16    the person wants to hire a lawyer is kind of up to the

17    person.  I mean, a person isn't forced to hire a lawyer, and

18    the lawyer isn't --

19             THE COURT:  What about if the person is a wage

20    earner and has to come down to court and his wages -- he

21    don't make wages or he doesn't get his tips because he has to

22    come to court and defend himself against a particularly

23    onerous statute which is -- which he winds up winning?

24             MR. RASCHKE:  Well, I expect he wins because

25    the statute isn't as onerous as he thought.

1                   THE COURT:  But there he lost wages.  Now, he

2       didn't lose -- he didn't have to pay attorney fees, but he

3       lost his wages, he lost his hourly, he lost his tips.

4                   MR. RASCHKE:  Well, instead they pay a lot more

5       to bring a class action.

6                   THE COURT:  That's their choice.

7                   MR. RASCHKE:  Well, it's their choice to hire a

8       lawyer.  We don't know whether Mr. Niska would have been

9       found in violation if he was there pro se.  A lot of the

10      people that come up in the administrative cases involving

11      211B are pro se and --

12                  THE COURT:  How frequently are we seeing 211B

13      cases?  And who does bring the charge against them, the

14      school board?

15                  MR. RASCHKE:  No.  It's any person.  I mean an

16      individual can bring the claim.  And like Mr. Kaardal said --

17      I mean it used to be that you went to the county attorney and

18      the county attorney was obligated --

19                  THE COURT:  Declined these things in a

20      heartbeat, I would imagine.

21                  MR. RASCHKE:  But they couldn't, you see, your

22      Honor, because they were obligated under the statute to

23      pursue it if there was reason to believe there was a

24      violation on pain of losing their job, I think, to -- you

25      know, to prevent, you know, politically motivated sweeping

1    under the rug of campaign violations.  And that became fairly

2    onerous on county attorneys who ended up prosecuting people

3    for doing things like giving away donuts at the campaign

4    office.

5           THE COURT:  Things of value.  I know that.  And

6    we've brought those doughnut and match comb dispensers to

7    their knees, as well we should.

8           MR. RASCHKE:  One piece of the legislative

9    history is that they have interposed, I guess, the

10   administrative -- the office of administrative hearings to at

11   least kind of preclear these cases before they get dropped in

12   the lap of the county attorney and the ALJ.  And the chief

13   ALJ does not, as a rule, decide these cases.  But under the

14   statute, the chief administrative law judge assigns to --

15          THE COURT:  To one of his deputies.

16          MR. RASCHKE:  -- one of the, you know,

17   individual ALJs who will make a preliminary determination as

18   to whether this is even, you know, prima facie allegations of

19   whether it's --

20          THE COURT:  A gross misdemeanor -- it's a year

21   in jail on a gross, isn't it?

22          MR. RASCHKE:  It can be.

23          THE COURT:  Okay.  All right.

24          MR. RASCHKE:  I don't know anybody that has

25   been under these circumstances.

```
1                        THE COURT:  But that's what a gross is.  What
2       is it, 10,000 bucks and a year in jail, isn't it?  Or is it a
3       thousand?
4                        MR. RASCHKE:  I'm trying to --
5                        THE COURT:  I try to avoid them.
6                        MR. RASCHKE:  Yeah.  I think it's 3,000 and a
7       year.
8                        THE COURT:  Okay.
9                        MR. RASCHKE:  You can be in jail for a
10      misdemeanor.
11                       THE COURT:  So you're of a mind that I ought to
12      dismiss this case; is that a fair statement?
13                       MR. RASCHKE:  Absolutely.  And it certainly
14      doesn't pass muster as a class action, your Honor.
15                       THE COURT:  I thank you.
16                       Mr. Kaardal, I'm offering you an option.
17                       MR. KAARDAL:  Yes, your Honor.
18                       THE COURT:  You can, if it is your choice,
19      persist in this complaint and this lawsuit.
20                       MR. KAARDAL:  Yes, your Honor.
21                       THE COURT:  You may do so and I will make
22      whatever ruling I think appropriate.
23                       MR. KAARDAL:  Yes, your Honor.
24                       THE COURT:  You can dismiss this lawsuit,
25      recast it and refile it, and I will order it reported to me
```

1    and I will take it up -- or -- should you decide to do so.

2    I'm not ordering you to make your decision right now.   You

3    may have 48 hours to go check out whether or not you've got a

4    defendant that I ought to have for a defendant in this case,

5    basically whether I have a sustainable lawsuit.   And if, at

6    the end of the 48 hours, you think it might be more prudent

7    for you to dismiss it, that's your pleasure.   Okay?  If you

8    think you want to proceed on this lawsuit the way you've cast

9    it here, I will rule on this lawsuit.

10                  MR. KAARDAL:  All right.

11                  THE COURT:  How's that?

12                  MR. KAARDAL:  That's pretty clear, your Honor.

13                  THE COURT:  What I'm saying is you've got a

14   free shot -- dismiss it, recast it, I'll take the case back.

15   And if you've got the parties laid out, I'll look at it that

16   way.

17                  MR. KAARDAL:  All right.  I appreciate it.  Can

18   I say a couple of comments?

19                  THE COURT:  Yes, sir.

20                  MR. KAARDAL:  Because I know -- they're very --

21   just helpful for the court.  Because either way, I'm going to

22   have a lawsuit.

23                  THE COURT:  I didn't say -- I don't say you get

24   to win on either one of them.   That's not the question.   I

25   don't say you lose on either one of them.

1          MR. KAARDAL:  Right.  But I just wanted to

2     express my client's determination to continue.  On the --

3     just quickly, my review of the statutory history, that it

4     goes back to the founding of the state.  And, so, this is

5     very old language.  When you look at the published --

6          THE COURT:  You know, I bless both of you on

7     this.  It's all be or the record.  There's nothing in the

8     briefs on that stuff.

9          MR. KAARDAL:  That's right.  But this is legal

10    -- it will save the court research time.

11         THE COURT:  That's what we do here.

12         MR. KAARDAL:  That's right.  And, then, on the

13    Minnesota -- these are barnacles that I've collected over

14    time and because I've done multiple cases here.  But I think

15    it's also relevant the court understanding the case that in

16    the time the county attorney has first jurisdiction over the

17    prosecution that there are, I think, ten published decisions

18    in the court of appeals.  No convictions were ever upheld.

19         THE COURT:  Which gets me to the question I

20    raised.  You've got an onerous statute; everybody gets

21    acquitted under it, but it doesn't mean that we're doing what

22    we ought to be doing here.  I can understand the problem.

23         MR. KAARDAL:  Then the funnel issue with

24    respect to the claims being brought -- I don't have -- the

25    documentation has never been collected over those hundred

1    years the county attorney has prosecuted.  But it is clear

2    from the Web site, the Office of Administrative Hearing, that

3    now there are lots of claims being filed.  Now, why is that?

4    Well, the county attorney filtered; and secondly,

5    traditionally, you know, the county -- well, let me put it

6    this way.  Defamation actions are limited by the fact only

7    the party injured can bring the civil lawsuit.  Here there's

8    no limitation.  So if you're a witness to the falsehood, you

9    can bring a claim in OAH.  If there's prima facie evidence,

10   it goes.  And, so, that's why we're seeing all these claims,

11   because it's accessible to anyone with an ax to grind.  You

12   know, "I don't like your views."  And, so, that's -- I want

13   to say this because the wealth of data regarding implementing

14   the statute is in the OAH record -- which we've included in

15   my affidavit -- and you had listed a number of scenarios.

16   And, so, with respect to Mr. Niska -- you know, one of the

17   statements that there's a prima facie cause was:  "Like most

18   Minnesotans, Howard Lake, we have Waverly taxpayers saw their

19   tax-supported schools shift from property taxes to state

20   income taxes a few years ago."  So Mr. Niska said this.  And

21   an administrative law judge found under this statute that

22   that was a prima facie violation.  He defended himself.  But

23   the point is no person was mentioned in that statement.  And,

24   so, traditionally, the only exception to the First Amendment

25   was made for things that harm people's reputations and --

1          THE COURT:  Mr. Kaardal, I'm going to bring

2     this to a conclusion.  I'm not saying you don't have a good

3     lawsuit, I'm not -- but I want -- phrasing the question is,

4     is this the good lawsuit that you want to have?

5          MR. KAARDAL:  Understood.  Now, I am going to

6     give you one cite before I go.

7          THE COURT:  Well, you're not going to do it for

8     very long because I've got to go up to my office.

9          MR. KAARDAL:  Okay.  The <u>Republican Party of</u>

10    <u>Minnesota v. White</u> --

11         THE COURT:  I've heard of the case.

12         MR. KAARDAL:  -- those were judge-crafted

13    rules, and we sued the judge's agents.

14         THE COURT:  There's a famous statement that

15    "Law is the art of reasoning by false analogy."

16         MR. KAARDAL:  Thank you, your Honor

17         THE COURT:  We're in recess.

18         THE CLERK:  All rise.

19         THE COURT:  You have 48 hours.  Let your

20    brother know what your choice is, let my staff know what your

21    choice is, please.  And if this is the case you want to

22    proceed on, we'll proceed on it.

23         MR. KAARDAL:  Thank you, your Honor.

24         THE COURT:  I thank you.  And if you want, as I

25    said, to rethink about it a little bit, decide whether you've

1       got a defendant who is the defendant you really want to have

2       and a party -- we'll proceed on that one.

3                       MR. KAARDAL:   All right.   Thank you, your

4       Honor.

5                       (Court stood in recess at approximately 11:20

6       a.m., on July 1st, 2008).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2   STATE OF MINNESOTA)

3                          )ss.

4   COUNTY OF HENNEPIN)

5

6          I, Ronald J. Moen, CSR, RMR, and a Notary Public in
    and for the County of Hennepin, in the State of Minnesota, do
7   hereby certify:

           That the said proceeding was taken before me as a CSR,
8   RMR, and a Notary Public at the said time and place and was
    taken down in shorthand writing by me;
9
           That said proceeding was thereafter under my direction
10  transcribed into computer-assisted transcription, and that
    the foregoing transcript constitutes a full, true and correct
11  report of the transcript of proceedings which then and there
    took place;

12         That I am a disinterested third person to the said

13  action;

14         That the cost of the original has been charged to the
    party who ordered the transcript of proceedings, and that all
15  parties who ordered copies have been charged at the same rate
    for such copies.
16
           That I reported pages 1 through 38,
17
           IN WITNESS THEREOF, I have hereto subscribed my hand
18  this 23rd day of January, 2009.

19

20
                                 s/Ronald J. Moen
21                               RONALD J. MOEN,
                                 CSR, RMR
22

23

24

25